IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BAYADA NURSES, INC.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BLUE CROSS BLUE SHIELD | : | |
| OF MICHIGAN | : | NO.  08-1241 |

**<u>MEMORANDUM AND ORDER</u>**

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE                                  July   30, 2008

Blue Cross Blue Shield of Michigan (BCBSM) has filed a Motion to Dismiss the

Complaint in this case, challenging both this court's personal jurisdiction over it and the

existence of venue in this district.  Because BCBSM is not subject to personal jurisdiction

in Pennsylvania, the motion to dismiss will be granted on jurisdictional grounds,

rendering the venue issue moot.  Rather than dismissing the case, however, I will transfer

the case to the United States District Court for the Eastern District of Michigan.

**I.    FACTS**

Bayada Nurses, Inc. (Bayada) is a Pennsylvania nursing services corporation.  On

or about October 17, 2003, representatives of Bayada and BCBSM had a telephone

conversation concerning insurance coverage for Johnnie Roberson, a retired employee of

Ford Motor Company covered by BCBSM.  Mr. Roberson, who lived in North Carolina,

was paralyzed due to Amyotrophic Lateral Sclerosis (ALS) and was in need of home

---

[1]The case was originally filed in the name of Bayada Nursing Services.  The
Plaintiff has filed an Amended Complaint to reflect its correct name.

health care nursing services.  Amended Complaint at ¶ 4.  Bayada had no contract with

BCBSM and was not a participating provider with BCBSM.  Id. at ¶¶ 13-14.

Nevertheless, BCBSM confirmed coverage "at one hundred percent with no pre-

authorization required," and stated that Mr. Roberson's coverage was as follows:

"$300.00 deductible, and out-of-pocket (OOP) maximum of $750 (which was satisfied)

and the plan will cover the Home Health Care services of Mr. Roberson at 100%."  Id. at

¶¶ 6-7.[2]  Bayada was directed to bill the local Blue Cross Plan in North Carolina.  Id. at ¶

7.  Following these conversations, Bayada began providing nursing services to Mr.

Roberson in North Carolina, and continued to do so for almost three years, through

August 2006.[3]

For the entire period from October 2003 through August 2006, Bayada billed for

services rendered and received payment from BCBSM at Bayada's post office lockbox in

Philadelphia, Pennsylvania.  Id. at ¶ 2.  BCBSM's payment checks were accompanied by

vouchers containing a Pennsylvania provider number for Bayada generated by BCBSM

and Bayada's tax identification number.[4]  See Affidavit of Steven Flannery (Doc. 21) at

---

[2]Representatives of Bayada and BCBSM also spoke on about October 14, 2003,
regarding nurses' hourly rates.  Id. at ¶ 8.

[3]On September 12, 2006, BCBSM instructed Mr. Roberson to have Bayada submit
its claims and treatment plans to BCBSM in Michigan.  Id. at ¶¶ 12, 15 (citing letter
attached as Ex. A to Amended Complaint).

[4]An example of one such voucher was provided as an exhibit during the oral
argument, marked Bayada Motion 1.

¶¶ 1-2.  The vouchers identified BCBSM as "an independent licensee of the Blue Cross and Blue Shield Association," and stated that BCBSM "is a member of the 'Blue Card Program' and at all relevant times related to this matter Bayada's . . . remittances were reimbursed through the Blue Card Program directly to Bayada's Philadelphia Lock Box location."  Id. at ¶¶ 5-6.

Bayada's claims stem from BCBSM's action limiting payment to 80%, rather than 100%, of the amount billed for Bayada's services provided to Mr. Roberson.  Specifically, on January 7, 2005, BCBSM notified Bayada of an "offset/recoupment" of $62,297.78, for the services Bayada had provided for the prior fourteen months (October 2003 through December 2004).  Amended Complaint at ¶ 10.  From that point forward, until August of 2006, BCBSM applied a 20% copayment, reducing the amount paid to Bayada by 20%.  Id. at ¶¶ 11-12.

## II.   **PROCEDURAL HISTORY**

On January 31, 2008, Bayada filed a Complaint in the Court of Common Pleas of Philadelphia County, alleging improper recoupment, unjust enrichment, estoppel, and negligent misrepresentation.  On March 13, 2008, BCBSM removed the case to federal court, alleging diversity jurisdiction and federal question jurisdiction based on the Employee Retirement Income Security Act of 1974 ("ERISA").  The matter was assigned to the Honorable William H. Yohn, who thereafter, on the consent of the parties, transferred the matter to the undersigned United States Magistrate Judge for all purposes.

On March 20, 2008, BCBSM moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2), (3) and (6), arguing that this court sitting in Pennsylvania lacks personal jurisdiction over it, and also on the ground that venue is improper in this district.  Bayada opposed the motion on April 28, 2006, and I held oral argument on June 26, 2008.  Because Bayada has failed to establish that this court has personal jurisdiction over BCBSM, I will grant BCBSM's motion and transfer the case to the United States District Court for the Eastern District of Michigan, and will not reach BCBSM's venue argument.[5]

## III.   DISCUSSION

BCBSM argues that this court lacks personal jurisdiction over it.  A federal district court may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the law of the state in which the district court sits.  See Fed. R. Civ. P. 4(k)(1)(A).  Pennsylvania's long-arm statute authorizes Pennsylvania courts "to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment."  Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir.1992) (citing 42 Pa. C.S.A. § 5322(b)).  Thus, BCBSM's motion calls upon the familiar rule that "[d]ue process requires that the

---

[5]In its motion, Defendant also sought dismissal on the ground that Bayada Nursing Services, the name under which the original Complaint was filed in state court, was not a legal entity because it was not a registered Pennsylvania corporation.  At the oral argument, counsel for the Defendant agreed that Plaintiff remedied this defect with the filing of an Amended Complaint, properly naming itself as Bayada Nurses, Inc.

4

defendant have 'minimum contacts' in the forum state, and that the exercise of jurisdiction comport with 'traditional notions of fair play and substantial justice.' " Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Sufficient minimum contacts exist where there is "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 451 (3d Cir. 2003) (quoting Asahi Metal Indus. v. Superior Court of California, 480 U.S. 102, 109 (1987)).[6] A defendant's contacts with the forum state reach the minimum level in one of two ways. When the contacts are "continuous and systematic," the court may exercise general jurisdiction over the defendant even if the contacts are unrelated to the plaintiff's cause of action. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) ("Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due

---

[6]The personal jurisdiction analysis might vary if the lawsuit triggered the nation-wide service of process provision of ERISA, 29 U.S.C. § 11312(e)(2). See Denny's, Inc. v. Cake, 364 F.3d 521, 524-25 (4th Cir.), cert. denied, 543 U.S. 940 (2004). This lawsuit does not. Bayada claims no right as a participant or beneficiary of an ERISA plan and seeks damages under state law causes of action. The law in this circuit is settled that such a suit does not trigger ERISA's enforcement and jurisdiction provisions. See Pascack Valley Hosp. V. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 400-03 (3d Cir. 2004) (hospital was not a participant or beneficiary of patient's ERISA plan and therefore hospital's suit to recover amounts due from patient's insurer did not arise under ERISA), cert. denied, 546 U.S. 813 (2005).

process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation." (footnote omitted)).  In contrast, "[s]pecific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities."  North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 688 (3d Cir. 1990).  Specific jurisdiction exists only where, based on its contacts with the forum, the defendant "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

When a defendant files a motion to dismiss for want of personal jurisdiction, the plaintiff "bears the burden of establishing the court's jurisdiction."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  To meet that burden, the plaintiff "need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Id.  A vague allegation without any factual specificity may not be sufficient, however, as "a plaintiff establishing personal jurisdiction must present more than 'mere affidavits which parrot and do no more than restate plaintiff's allegations . . . without factual content.'"  Asanov v. Gholson, Hicks & Nichols, P.A., 209 Fed. Appx. 139, 141 (3d Cir. 2006) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 (3d Cir. 1984)).

Bayada argues that BCBSM's contacts with Pennsylvania support the exercise of both general and specific jurisdiction.  It relies on BCBSM's participation in the "Blue

6

Card" program to support the court's exercise of general jurisdiction, and it relies on the parties' course of dealings in this case to support the exercise of specific jurisdiction. BCBSM argues that Bayada has not supported its argument for general jurisdiction with anything more than vague allegations, and that its limited contacts with the Commonwealth in this case are insufficient to establish specific jurisdiction.

A.    General Jurisdiction

As summarized above, a court can only exercise general jurisdiction where the defendant's contacts to the forum state are "continuous and systematic." See Helicopteros, 466 U.S. at 414. As one court has articulated this standard, "we examine all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." Hirsch v. Blue Cross, Blue Shield of Kansas, 800 F.2d 1474, 1478 (9th Cir. 1986) (concluding that district court in California did not have general jurisdiction over defendant which was not authorized nor licensed to do business in California, was not registered to do business there, did not maintain an office or mailing address there, had no agent for service of process, representatives or employees there, and paid no state taxes there) (citing, inter alia, Helicopteros, 466 U.S. at 411; World-Wide Volkswagen, 444 U.S. at 295).

This analysis derives directly from the Supreme Court's decision in Helicopteros. There, the defendant helicopter manufacturer entered into business with a Texas joint

venture, and high-level executives traveled to Texas to negotiate the terms.  The

defendant also did other business in Texas, including purchasing 80% of its helicopter

fleet in addition to parts and accessories in Texas over an eight-year period, and sending

management, maintenance personnel and prospective pilots to Texas for training.  The

defendant also hired some employees in Texas, including the decedents in the case at

issue.  466 U.S. at 410-12.  The Supreme Court concluded that these contacts  could not

be described as continuous and systematic in nature and thus did not confer general

jurisdiction on the courts of Texas, in light of the following activities that the defendant

had <u>not</u> performed or conducted in Texas; the defendant was never authorized to do

business in Texas, did not have an agent for service of process in Texas, did not perform

helicopter operations in or sell any products that reached Texas, never signed any

contracts, recruited employees or had any employees based in Texas, and never owned

real estate, maintained records, or had shareholders in Texas.  <u>Id.</u> at 411, 416-17 (citing

<u>Perkins v. Benguet Consolidated Mining Co.</u>, 342 U.S. 437 (1952) (no general

jurisdiction in Ohio court despite fact that president of foreign company maintained office

in Ohio from which he conducted company's business)).

Bayada's allegations in support of general jurisdiction do not establish the type of

continuous and systematic contacts discussed in <u>Helicopteros</u>, and indeed its allegations

are bare-boned.  First, the Amended Complaint itself makes no allegation relevant to the

existence of general jurisdiction, simply identifying BCBSM as "a non-profit corporation

8

which administers a self-funded healthcare plan to among other entities the Ford Motor

Company employees."  Amended Complaint at ¶ 3.  Next, in its response to the motion to

dismiss, Bayada stated that "[i]f granted to leave to amend, Bayada will also allege

BCBSM has substantial contact with Pennsylvania businesses and citizens through its

Blue Card program."  See Bayada's Memorandum in Response to Motion to Dismiss at 2.

Bayada explained in its memorandum that BCBSM, as a member of the national Blue

Cross Blue Shield Association, honors the "Blue Card" program, which requires

Association members to honor each other's obligations to out-of-state subscribers.  For

example, BCBSM is obligated to treat Pennsylvania subscribers traveling in Michigan,

and member Pennsylvania entities are obligated to treat Michigan subscribers traveling in

Pennsylvania.  See id. at 6.[7]

Prior to oral argument, I directed the parties to provide affidavits to support any

facts they intended to rely upon at the hearing not already contained in the pleadings.  In

response, Bayada provided the affidavit of Mr. Flannery (Doc. 21), which only states that

---

[7]Bayada never sought leave to supplement its pleadings or the record with such allegations, nor did it request any discovery into the Blue Card program or BCBSM's contacts in Pennsylvania.  Bayada did refer to a recent settlement agreement by which BCBSM and other Association members have invested in improvements and efficiencies in the Blue Card program.  See id. at 7 (citing in Love v. Blue Cross Blue Shield Association, et al, No. 03-21296-CIV-Moreno (S.D. Fl. Apr. 20, 2008)).  Bayada did not make any documents from that case of record here.  Review of the Plaintiff's Motion for Final Approval of Settlement (Doc. 1086 in that action) contains no information relevant to the existence of general jurisdiction over BCBSM in Pennsylvania.

BCBSM is a member of the Blue Card Program and that Bayada was reimbursed through the Blue Card Program.  See Affidavit of Steven Flannery, at ¶ 6.

During oral argument, counsel for Bayada attempted to explain the scope and breadth of the Blue Card program and suggested that the court take judicial notice of the fact that participation in the Blue Card program requires BCBSM to have regular contact with Pennsylvania residents.  Counsel also argued that BCBSM's contact with this jurisdiction could be based on its relationship with certain General Motors plants in Pennsylvania.  Neither of these allegations is supported by affidavit, but in any event the allegations are simply too vague to support a finding of general jurisdiction.

While I accept the truth of Bayada's allegations in determining whether personal jurisdiction exists, the allegations regarding the Blue Card Program are insufficient for me to make such a determination about general jurisdiction.  The exercise of general jurisdiction must be based upon "continuous and systematic" contacts with Pennsylvania, and Counsel's argument does not establish the types of contacts upon which this court can base a finding of general jurisdiction.  See, e.g., Dibsie v. Gulf Stream Coach, Inc., No. 07-5798, 2008 WL 2230658 *7 (D.N.J. May 28, 2008) (quoting Ajax Enters. v. Szymoniak Law Firm, P.A., No. 05-5903, 2008 WL 1733095, at *2 (D.N.J. Apr. 10, 2008) ("[e]xamples of contacts that could establish general jurisdiction in the forum state are the existence of: facilities, offices, employees, registered agents, real property, telephone listings or bank accounts"); Olympia Steel Bldg. Sys. Corp. v. General Steel

Domestic Sales, LLC, No. 06-1597, 2007 WL 1217992, at * 4 (W.D. Pa. Apr. 24, 2007)

(same); American Cyanimid Co. v. Eli Lilly & Co., 903 F. Supp. 791, 786 (D.N.J. 1995)

(general jurisdiction established where patent owner conducted extensive research in

forum and maintained a manufacturing facility in the forum that employed 30 people);

Provident Nat'l. Bank v. California Fed. Sav. & Loan Ass'n., 819 F.2d 434, 438 (3d Cir.

1987) (bank account held in forum state with daily business activity that was central part

of defendant's business established general jurisdiction).

Furthermore, many of the facts the Supreme Court focused on in Helicopteros and

relied upon in the cases cited above are also not present here.  As far as the pleadings

disclose, BCBSM does not have a place of business in Pennsylvania and has never been

licensed to do business here.  It makes no sales here, has no employees here and has no

agent for service of process here.  It has no interest in any property here.  All of these

facts suggest that the exercise of general jurisdiction here would be inconsistent with the

Supreme Court's holding in Helicopteros.[8]

B.      Specific Jurisdiction

As previously summarized, the exercise of specific jurisdiction over a non-forum

defendant is permissible where the defendant's forum-related activities are such that the

---

[8]It would be inappropriate to take judicial notice of the type of facts counsel for
Bayada alluded to at the oral argument, and I decline to do so.  See Fed. R. Evid. 201(b)
(judicially noticed fact must be one not subject to reasonable dispute).  In any event,
counsel's allegations were simply too vague to even consider judicial notice.

11

defendant "should reasonably anticipate being haled into court there."  World-Wide

Volkswagen, 444 U.S. at 297.  The answer to this question involves a three-part inquiry;

1) has the defendant purposefully directed his activities at the forum; 2) do the claims

arise from those activities; and 3) would the exercise of jurisdiction otherwise comport

with notions of "fair play and substantial justice."  See Marten v. Godwin, 499 F.3d 290,

296 (3d Cir. 2007) (citing, inter alia, O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312,

317 (3d Cir. 2007); Burger King, 471 U.S. at 472, 476; Helicopteros, 466 U.S. at 414).

This is necessarily a case-by-case inquiry.  Id. (citing Remick v. Manfredy, 238 F.3d 248,

255-56 (3d Cir. 2001)).  It is not contested that Bayada's claims arise from BCBSM's

contacts in Pennsylvania.  Rather, BCBSM disputes that it purposefully directed its

activities to Pennsylvania, and argues this court's exercise of jurisdiction would be unfair

in view of its limited contacts here.

The primary fact upon which Bayada relies is that, for an almost three-year period

from October 2003 through August 2006, BCBSM sent regular payments to Bayada in

Pennsylvania.  The payments were accompanied by vouchers on which BCBSM

identified a Pennsylvania code that it generated for Bayada as well as Bayada's tax

identification number.  The payments were preceded by at least two telephone

conversations between representatives of Bayada and BCBSM discussing Mr. Roberson's

coverage terms, although Bayada does not allege where the respective participants were

located during these conversations.  At the least, once it started making payments, BCBSM knew that Bayada was in Pennsylvania.

Bayada argues that by these actions BCBSM "reached out" to a Pennsylvania corporation to secure nursing services for its insured.  However, the factual allegations do not support such a conclusion.  The Amended Complaint merely references telephone calls between Bayada's Insurance Confirmation Office and BCBSM, in which Mr. Roberson's insurance coverage was confirmed and the rates of service were discussed. See Amended Complaint, at ¶¶ 6-8.  There is no evidence that BCBSM contacted Bayada to secure nursing services for Mr. Roberson, and indeed the sole affidavit submitted by Bayada (Flannery) is silent on this issue.  Because Bayada was not a BCBSM participating provider, it is more likely that Mr. Roberson's family arranged for Bayada's services, and then, as a result, Bayada and BCBSM conferred regarding payment rates. BCBSM's payments to Bayada were similarly the result of the prior selection of Bayada as the provider, and not BCBSM's choice to do business with Bayada in Pennsylvania. The record reveals no reason for BCBSM to "reach out" to Bayada in Pennsylvania to provide nursing services to Mr. Roberson in North Carolina.

Utilizing Farino as the Third Circuit's benchmark, I conclude that Bayada has failed to establish specific jurisdiction.  In Farino, the defendant Virginia real estate developers approached Mellon Bank at its District of Columbia branch seeking financing for several real estate transactions.  960 F.2d at 1219-20.  The developers furnished

certain financial and other information to Mellon at its Pennsylvania office.  Id.  The parties agreed to loan terms requiring monthly interest payments plus balloon principal payments at the end of the loan terms, all to be sent to Mellon in Pennsylvania, and the notes designated Mellon's Pennsylvania address for all correspondence.  Id.  When the balloon payments were not made, the defendants negotiated extensions with Mellon on at least three occasions, forwarding updated financial information to Mellon in Pennsylvania each time.  Id.  When the borrowers again failed to make payments, Mellon brought a diversity contract action in federal district court in Pennsylvania.

Observing that these facts presented a "close case," the Third Circuit concluded that the defendants' activities in Pennsylvania were sufficient to justify the exercise of specific jurisdiction.  Id. at 1223-26.  Although entering the loan agreements with a Pennsylvania bank was not alone sufficient, the court held that the parties' course of dealings demonstrated that the borrowers deliberately chose to do long-term business with a Pennsylvania bank, thereby creating "continuing relationship and obligations with citizens of another state."  Id. at 1223 (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)).  The court also found significant that the borrowers "stood to benefit directly from the success" of the real estate deals they were financing through the loans.  Id. at 1225.  These are the types of contacts and factors the Third Circuit looks to to support a finding of specific jurisdiction.  See also, e.g., Telecordia Tech Inc. v. Telkom SA, 458 F.3d 172, 177-79 (3d Cir. 2006) (telecommunication company's contacts

14

with forum, including long-term quarter billion dollar contract with forum company to exchange customized merchandise, performance of activities and visits in the forum related to the contract and making contract payments via a forum bank were sufficient to establish specific jurisdiction in action to enforce arbitral award under the contract), <u>cert. denied</u>, 127 S.Ct. 1261 (2007).

Bayada suggests that <u>Farino</u> is analogous to this case, arguing that BCBSM availed itself of the privilege of conducting business in this forum and created a continuing obligation with a Pennsylvania corporation.  I disagree.  In <u>Farino</u>, the defendants chose to do business with Mellon, purposely directing their activities to a Pennsylvania resident. In contrast, BCBSM was not undertaking to enter a business relationship with Bayada. Rather, it was sending payments to Bayada to fulfill an existing obligation.  As previously stated, there is no evidence that BCBSM arranged for Bayada's services for Mr. Roberson.  Nor did BCBSM stand to profit from any relationship with Bayada. Moreover, in <u>Farino</u>, the defendants renegotiated the terms of the loans several times, contacting the Pennsylvania bank and providing updated financial statements in Pennsylvania.  There are no analogous indications of ongoing negotiations and discussions here.

On the record before this court, the only similarity between <u>Farino</u> and this case is the stream of payments made to a corporation in this forum.  I conclude that this is insufficient to establish specific jurisdiction.  The tendering of payment in this forum is

not sufficient to establish personal jurisdiction.  See, e.g., ANR, Inc. v. Rothner No. 06-2872, 2007 WL 712539, at *4 (E.D. Pa. Mar. 6, 2007) (Buckwalter, J.) (citing Farino, 960 F.2d at 1225); Lynch v. New Jersey Auto. Full Ins. Underwriting Ass'n., 762 F.Supp. 101, 104 (E.D. Pa. 1991) (citing Time Share Vacation Club v. Atlantic City Resorts Ltd., 735 F.2d 61 (3d Cir. 1984)).  The fact that such payments were made over a matter of years does not change this outcome.  See Telco Leasing Inc. v. Marshall Co. Hosp., 586 F.2d 49 (7th Cir. 1978) (finding two years of rental payments sent to forum not sufficient to establish jurisdiction); Whittaker v. Medical Mut. of Ohio, 96 F.Supp.2d 1197, 1200-01 (D. Kan. 2000) (payments sent to forum and notice of cessation of payments not sufficient contacts with forum).  The same outcome would also hold even if Plaintiff established that BCBSM Michigan knew it was dealing with a Pennsylvania corporation at the time it confirmed coverage for Mr. Roberson.  See Memorial Hosp. Sys. v. Blue Cross & Blue Shield of Arkansas, 830 F.Supp. 968, 971-72 (S.D. Tex. 1993) (negligent response to telephonic inquiry from Texas hospital not sufficient).[9]

The facts here do not present the same "close case" as Farino.  960 F.2d at 1223.  Here, we do not have evidence that BCBSM sought to do business with a Pennsylvania

---

[9]Although no contract exists between Bayada and BCBSM, Bayada argues that BCBSM entered into a quasi-contract with Bayada, supporting a finding of specific jurisdiction.  Regardless of the formation of a quasi-contract, Bayada has failed to establish the minimum contacts necessary to support a finding of specific jurisdiction.  See Fetter v. North American Alcohols, Inc., No. 06-4088, 2007 WL 551512, at * 7 (E.D. Pa. Feb. 15, 2007) (one meeting in forum state was insufficient to establish minimum contacts in a quasi-contract claim).

corporation as the defendants in <u>Farino</u> did.  Nor do we have the continuing renegotiation and contact between Plaintiff and Defendant. We merely have a stream of payments sent to a Pennsylvania corporation at a Pennsylvania post office box.  This is not sufficient to establish specific jurisdiction.

Finally, at oral argument, Bayada's counsel argued the offset/recoupment is akin to BCBSM reaching into the lockbox in Philadelphia and removing $62,000, an action over which this court would surely have jurisdiction.  This may well be true, but the analogy is inapt.  Unlike a theft, which occurs where the property is taken, in this jurisdiction, the failure to remit payments is an omission that actually occurs in the jurisdiction from which the payment is coming.  <u>Cottman Transmission Sys., Inc. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994).  I find no distinction between the failure to remit payments and the remittance of payments at less than the full claim.  The action or inaction giving rise to this complaint occurred in Michigan.

## IV.   <u>CONCLUSION</u>

Based on the record before the court, I conclude that BCBSM's contacts taken as a whole are insufficient to establish the minimum contacts necessary to support a finding of general or specific jurisdiction.  However, rather than dismissing the action, I will transfer the case to the United States District Court for the Eastern District of Michigan.  At the oral argument, I asked both sides to suggest a proper venue for this suit in the event I found that this court lacked personal jurisdiction over BCBSM.  Plaintiff suggested North

Carolina or New Jersey, where Bayada's current office is located.[10]  Defendant suggested

transfer to Michigan, and was unwilling to concede that personal jurisdiction would exist

in North Carolina.

Plaintiff has not argued that transfer to Michigan would cause any greater hardship

than transfer to North Carolina.  Because the courts in Michigan clearly have personal

jurisdiction over BCBSM, I will transfer the case to the Eastern District of Michigan,

where BCBSM is located, from which the payments to Bayada were made and the notice

of recoupment and offset were sent.  See ANR, 2007 WL 712539, at *5 ("In transferring

this case to the appropriate court, the Court is following a common practice of

transferring a case to the appropriate district instead of dismissing for lack of personal

jurisdiction.") (citing 2 JAMES WM. MOORE ET AL., Moore's Federal Practice ¶ 12.31

(3d ed. 2006)).[11]

An appropriate order follows.

---

[10]Plaintiff did not suggest any basis for personal jurisdiction over Defendant in New Jersey.

[11]Also pending is Bayada's Motion to Remand, in which Bayada challenges the existence of removal federal question jurisdiction under ERISA and also argues that the court should decline to exercise diversity jurisdiction.  Bayada is most likely correct that the matter was not properly removed on the basis of federal question jurisdiction.  See Pascack Valley, 388 F.3d at 398-404 (hospital's breach of contract action against welfare benefit plan not removable under ERISA).  Nevertheless, the matter was clearly removable on the basis of diversity jurisdiction, and the court lacks discretion to remand where diversity jurisdiction exists.  In any event, the remand motion is now moot in light of my ruling on the motion to dismiss, and is addressed by separate order.

18

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BAYADA NURSES, INC.                          :          CIVIL ACTION
                                             :
           v.                                :
                                             :
BLUE CROSS BLUE SHIELD                       :
OF MICHIGAN                                  :          NO.  08-1241

## O R D E R

            AND NOW, this                    day of July, 2008, upon consideration of

Defendant's Motion to Dismiss (Doc. 3), the response (Doc. 11), the reply (Doc. 15),

counsel's contentions at the oral argument, and for the reasons stated in the

accompanying memorandum, IT IS HEREBY ORDERED that the Motion to Dismiss is

GRANTED to the extent the case is TRANSFERRED to the United States District Court

for the Eastern District of Michigan on the ground that this court lacks personal

jurisdiction over the defendant.


                                    BY THE COURT:



                                    /s/ Elizabeth T. Hey_____
                                    ELIZABETH T. HEY
                                    UNITED STATES MAGISTRATE JUDGE